# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
### PINE BLUFF DIVISION

TRISTAN R. TRAVIS                                                                PETITIONER
ADC #158139

VS.                              5:17-CV-00044 SWW/JTR


WENDY KELLEY, Director,
Arkansas Department of Corrections                               RESPONDENT


## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge Susan Webber Wright. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the entry of this Recommendation. The failure to timely file objections may result in waiver of the right to appeal questions of fact.

### I. Background

Pending before the Court is a § 2254 Petition for a Writ of Habeas Corpus filed by Petitioner, Tristan R. Travis ("Travis"). *Doc. 2.* Before addressing Travis's habeas claims, the Court will review the procedural history of the case in state court.

On June 29, 2014, a jury convicted Travis of one count each of rape and second-degree battery. *Doc. 14-1*. The victim, K.S., was three years old. The jury sentenced Travis to an aggregate sentence of 444 months imprisonment. *Id.*

Travis filed a direct appeal. His sole argument was that the trial court erred in finding K.S. competent to testify. On October 21, 2015, the Court of Appeals affirmed. *Travis v. Arkansas*, 2015 Ark. App. 572. Travis petitioned for review in the Arkansas Supreme Court. His petition was denied on January 28, 2016. Travis did not seek Rule 37 relief.

On February 21, 2017, Travis initiated this federal habeas action. *Doc. 1*. In his Petition and two Addendums[1] thereto, Travis asserts the following claims for habeas relief:

(1) Trial counsel was ineffective for failing to investigate the risks and dangers of using suggestive questions on a sleep-deprived child, resulting in an ineffective cross-examination of two witnesses;[2]

(2) Trial court error in ruling K.S. competent to testify despite suggestive questioning and inconsistencies in her testimony, and trial counsel ineffectiveness for failing to learn procedures for determining witness competency and failing to suppress the victim's testimony;[3]

(3) The prosecutor's opening and closing statements were misleading, and his trial counsel was ineffective for:

---

[1] *See Doc. Nos. 4 and 16.*
The Court has broadly construed Travis's habeas claims, some of which appear to assert both claims of trial error and ineffective assistance.

[2] *Doc. 4 at pp. 1-2.*

[3] *Doc. 4 at p. 3.*

2

(a) failing to object to the misleading testimony that the prosecutor relied on to argue that Travis had sexual intercourse with the victim; and

(b) failing to investigate the applicable criminal statutes, resulting in the failure to make a meaningful motion for directed verdict;[4]

(4) Trial counsel was ineffective for refusing to call Travis's wife as a witness;[5]

(5) Trial counsel was ineffective for failing to subpoena the mental health records of K.S.'s mother to establish that she had reported, before the alleged crime, that K.S. was masturbating;[6]

(6) Trial counsel was ineffective for failing to investigate the police department evidence room policies, failing to explore whether the evidence could have been fabricated, failing to challenge admission of the evidence, and failing to cross-examine the police officer regarding these issues;[7]

(7) Denial of a speedy trial.[8]

(8) The prosecutor erred when it argued in closing argument that K.S. was crying for her mommy while Travis held her down and penetrated her;[9]

(9) Cumulative error.[10]

(10) Trial counsel was ineffective for failing to investigate the battery statute and to file a meaningful motion for mistrial or for directed verdict regarding that charge.[11]

---

[4] *Doc. 4 at p. 4.*
[5] *Doc. 4 at p. 6.*
[6] *Doc. 4 at p. 7.*
[7] *Doc. 4 at p. 8.*
[8] *Doc. 4 at p. 9.*
[9] *Doc. 4 at p. 10.*
[10] *Doc. 4 at p. 11.*
[11] *Doc. 16.* Because this claim was asserted in an Addendum filed by Travis on June 13, 2017, it was not addressed in Respondent's Response filed on June 9, 2017.

Travis also contends, with respect to all of his ineffective assistance of trial counsel claims, that his appellate counsel was ineffective in failing to raise such claims on direct appeal. *See Doc. 4 at p. 12*.

Respondent has filed a Response arguing that all of Travis's habeas claims are procedurally defaulted. *Doc. 14*. Because the Court agrees, it recommends that the Petition for a Writ of Habeas Corpus be denied, and that the case be dismissed, with prejudice.

## II. Discussion

### A.    The Evidence Against Travis

The Arkansas Court of Appeals summarized the evidence against Travis:

The incident from which the charges against Travis stemmed occurred on April 20, 2012, when Travis was babysitting then three-year-old K.S. and her younger brother so that his wife and K.S.'s mother could attend a church social function. On June 5, 2014, a pretrial hearing was held to determine whether K.S., who was five years old at the time of the hearing, was competent to testify. At the hearing, the State asked K.S. if she knew the difference between the truth and a lie:

Attorney: ... [I]f I told you your blanket was red, is that the truth or is it a lie?
Witness: Lie.

Attorney: Why is that a lie?
Witness: Because you are telling not the truth.

Attorney: Okay. What is the truth?
Witness: That you're telling the truth and you don't get sent to your room.

Attorney: Okay. But what's the truth about your blanket?

4

Witness: That it's not red. It's pink.
Attorney: That it's pink. Okay. All right. And can you promise to tell us the truth?
Witness: Yes.

K.S. was sworn in, and again asked if she understood the difference between the truth and a lie:

Attorney: All right. So what did you just tell that lady? What did you tell her? What did you just say to her?
Witness: I told her that I swear to tell the truth.

Attorney: Okay. And so can you tell us the truth?
Witness: Uh-huh.

Attorney: What happens if you don't tell the truth?
Witness: You get in trouble.

On direct examination, K.S. described the events of the evening of April 20, 2012. She testified that Travis put a broken crayon into her pee-pee while she was lying on the living room floor. She testified that he put wire hangers in her pee-pee after he put the crayon inside her and that her mother was not there when it happened. She testified that it hurt and that she bled.

K.S. was then cross-examined. K.S. relayed many of the same facts, but she contradicted herself as questioning became lengthy. When questioned, she explained that her mother left her with Travis at his home where they watched television, and she colored. She explained that Travis put a crayon in her pee-pee, and that she was lying on a towel in the living room of his house when it happened. On further questioning, she testified that she could not remember which room in Travis's house she was in when he put the crayon inside her. She testified that after he had put the crayon inside her, he put wires and hangers inside her, and again she testified that it had happened in the living room. K.S. testified that only Travis had touched her pee-pee that day. She testified that her mother came back after Travis had hurt her. K.S. offered contradictory testimony about when and with whom she left the Travis home, and K.S. testified that she recalled speaking to a

woman who showed her a drawing of a boy and a girl but that she did not remember talking to a police officer after the incident.

Cross-examination continued, and K.S. related more facts concerning the events of April 20. As the questioning went on, K.S.'s relation of the facts became more contradictory.

The circuit court ruled that K.S. was competent to testify because she had the capacity to transmit a reasonable statement of the events to the jury, and because she had the ability to tell the truth.

The jury trial was held June 18–20, 2014, and K.S. testified. On direct examination, K.S. told the jury that she could tell the difference between a lie and the truth and promised to tell the truth. Many times during direct examination, K.S.'s initial answer was "I don't know." However, when asked again, or if the question was rephrased, K.S. was able to relay facts. When asked several times and several different ways, K.S. consistently supplied the information that Travis put a crayon and hangers inside of her pee-pee and that the event occurred at Travis's home, in his living room. She testified that blood came out of her pee-pee and that it hurt.

K.S.'s testimony became more contradictory and less responsive upon extensive cross-examination. After responding to the defense that she understood the difference between a lie and the truth and that she promised to tell the truth, the defense asked K.S. if she remembered her mother telling her what would happen if she told a lie. K.S. responded, "No" and continued to respond "no" to questions from counsel that attempted to ascertain whether she remembered particular events. The defense argued that K.S. was not competent, and the circuit court resolved the issue by stating that K.S. was competent, but it was for the jury to decide whether she was credible. Eventually, after more questioning, K.S. was nonresponsive and answered "a lie" when asked if she had told the truth or a lie about Travis. The circuit court stated that it had concerns, but still found that K.S. was competent to testify and that her inconsistency was a credibility issue for the jury.

The State called several other witnesses to testify. According to Dr. Andrew Bozeman, the senior pediatric surgeon who examined K.S. within hours of the incident, K.S.'s injuries in and around her vagina,

urethra, and labia caused bleeding and bruising, and it was extremely unlikely that she had caused this trauma to herself because it would have caused "excruciating pain." Experts from the Arkansas State Crime Lab (ASCL) testified that the shorts and underwear worn by K.S. had both K.S.'s blood and Travis's semen on them. There was expert testimony that "within all scientific certainty" the semen was Travis's. The forensic-DNA examiner from the ASCL testified that the coat hanger and the pliers submitted to the lab had K.S.'s blood on them. The State also introduced a videotaped statement Travis made to Detective Jeremiah Terrell, admitting that he had inserted a coat hanger and pliers into K.S.'s vagina. In this videotaped statement, Travis claimed that he panicked, and that is why he did not seek medical attention for the child. He stated to Detective Terrell that he could tell it was very painful to K.S. when he inserted the pliers into her vagina to remove the crayon. Travis never offered an explanation of how his semen got on K.S.'s underwear.

*Travis v. State*, 2015 Ark. App. 572, *2-*5.

## B. Travis Has Procedurally Defaulted His Federal Habeas Claims

A habeas petitioner must first "fairly present" his claims in state court *before* seeking § 2254 relief in federal court. *Murphy v. King*, 652 F.3d 845, 848-49 (8th Cir. 2011); 28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus ... shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State"); *Miller v. Lock*, 108 F.3d 868, 871 (8th Cir. 1997) ("[B]oth the factual grounds and legal theories on which the claim is based must have been presented to the highest state court in order to preserve the claim for federal review.").

By exhausting all available state court remedies, a habeas petitioner gives the State that convicted him an "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (per curiam).

When a petitioner fails to fully exhaust his claims in state court and the time for doing so has expired, his claims are procedurally defaulted. *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991). When a procedural default occurs, federal habeas review of the claim is barred unless the prisoner can demonstrate "cause" for the default and "actual prejudice" as a result of the alleged violation of federal law, or demonstrate that failure to consider his claim will result in a "fundamental miscarriage of justice." *Id.* at 750.

Respondent argues that *all* of Travis's habeas claims are procedurally defaulted because *none* of the claims he now asserts were fully exhausted in state court and the time for doing so has expired. The Court agrees.

On direct appeal, Travis presented only one claim -- that the trial court abused its discretion in finding K.S. competent to testify. *Doc. 14-2*. Travis argued this claim purely as a state law evidentiary issue and did not allege any violation of federal law. *Id.*

After losing his direct appeal, Travis had sixty (60) days after the mandate issued from the Arkansas Court of Appeals to initiate a post-conviction proceeding

in the state trial court.  *See* Ark. R. Crim. P. 37.2.   Travis failed to file a Rule 37 Petition.

Because Travis failed to present and exhaust in state court the factual and legal basis for *any* of the claims for federal habeas relief he now asserts, *all* of his claims are procedurally defaulted.  *See Carney v. Fabian*, 487 F.3d 1094, 1096 (8th Cir. 2007) ("In order to fairly present a federal claim to the state courts, the petitioner must have referred to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue in a claim before the state courts." (internal quotation marks omitted) (*quoting McCall v. Benson*, 114 F.3d 754, 757 (8th Cir.1997))).

Travis's only argument to excuse his procedural default is based on the Court's holding in *Martinez v. Ryan*, 566 U.S. 1 (2012), as expanded by *Trevino v. Thaler*, 133 S. Ct. 1911 (2013), and held applicable to certain Arkansas cases in *Sasser v. Hobbs*, 735 F.3d 833, 853-54 (8th Cir. 2013).[12]   For the reasons explained

---

[12] Travis argues in his Reply that his argument to save his claims from procedural default is based solely on *Sasser* and *Trevino*, and that Respondent has tried to "deceive" the Court by only discussing *Martinez*, which Travis describes as "simply obsolete." *Doc. 20 at pp. 1-2*. This argument is misguided.  It is impossible for Travis to rely on *Sasser*, the case that applied *Martinez* and *Trevino* to Arkansas proceedings, without also relying on *Trevino* and *Martinez*.  Accordingly, the Court, like Respondent, will at times refer solely to the *Martinez* exception, with the understanding that the reference also embraces *Trevino* and *Sasser*.

below, this narrow exception to the procedural default doctrine does not save *any* of Travis's claims.

### C. *Martinez* And Its Progeny Will Not Excuse Travis's Procedurally Defaulted Habeas Claims

While Travis argues that the *Martinez* exception saves *all* of his defaulted claims, the exception is far narrower that he suggests. All of Travis's habeas claims fall into one of three categories: (1) trial errors under state or federal law;[13] (2) ineffective assistance of trial counsel; or (3) ineffective assistance of appellate counsel. The *Martinez* exception applies only to ineffective assistance of *trial counsel* – not to any other kind of trial error or ineffective assistance of *appellate counsel*. *Davila v. Davis*, 137 S.Ct. 2058 (2017) (confirming *Martinez* does not apply to habeas claims based on ineffective assistance of *appellate counsel*); *Dansby v. Hobbs*, 766 F.3d 809, 832-34 (8th Cir. 2014) (declining to extend *Martinez* to reach any other claims of trial error other than ineffective assistance of trial counsel claims).

While the *Martinez* exception is potentially applicable to claims of constitutional ineffective assistance of trial counsel, in Arkansas a petitioner must

---

[13] Travis is not entirely clear on whether his claims of trial court errors were errors arising under state or federal law. To the extent those errors are matters of state law, they fail because § 2254 habeas exists to remedy federal constitutional violations, not errors of state law. *Evenstad v. Carlson*, 470 F.3d 777, 782-83 (8th Cir. 2006); 28 U.S.C. § 2254(d)(1).

first initiate a Rule 37 proceeding.[14]  If no Rule 37 petition is filed, *Martinez* and its progeny cannot be applied to save any procedurally defaulted claims.[15]

Federal trial courts in Arkansas have consistently held that a habeas petitioner like Travis must, at a minimum, initiate the "initial collateral review proceeding" by filing a Rule 37 petition with the state trial court before he can rely on *Martinez* to excuse his procedural default.  *See, e.g.*, *Willis v. Kelley*, No. 5:16-CV-05101, 2017 WL 906979, at *4 (W.D. Ark. Feb. 17, 2017), report and recommendation adopted by, 2017 WL 901899 (W.D. Ark. Mar. 7, 2017);  *Moore v. Kelley*, No: 5:14-CV-0094, 2016 WL 958125 at 4 (E.D. Ark. Feb. 18, 2016), report and recommendation adopted by, 2016 WL 1020839;  *McCullough v. Kelley*, No. 5:15-CV-00162, *2, 2016 WL 1039521 (E.D. Ark. Feb. 25, 2016) ("*Martinez* does not apply in this case because Petitioner did not file a Rule 37 petition."), report and recommendation adopted by, 2016 WL 1047369;  *Bland v. Hobbs*, No. 5:11-CV-286, 2012 WL 2389904, at *3 n. 5 (E.D. Ark. June 12, 2012) (failure to file a state post-conviction

---

[14]  Under Arkansas law, ineffective assistance of trial counsel claims generally must be raised in a Rule 37 petition and may not be considered on direct appeal. *Ratchford v. State*, 357 Ark. 27, 31 (2004) ("It is well settled that this court will not consider ineffective assistance as a point on direct appeal unless that issue has been considered by the trial court."). Thus, to exhaust his Rule 37 ineffective assistance of counsel claims, Travis was required to raise those claims with the trial court and then appeal its denial of relief to the Arkansas Supreme Court. *Armstrong v. Iowa*, 418 F.3d 924, 925-26 (8th Cir. 2005).  Travis did neither.

[15]  After all, the *Martinez* exception is premised on "cause" consisting of "there being no counsel or only ineffective counsel during the state collateral review proceeding."  *Dansby v. Hobbs*, 766 F.3d 809, 834 (8th Cir. 2014) (omitting citation and internal quotes).  Absent a state collateral review proceeding, the "cause" for the equitable exception ceases to exist.

petition prevents application of the *Martinez* exception), report and recommendation adopted by, 2012 WL 2874118 (E.D. Ark. July 13, 2012).[16]  Travis's failure to file a Rule 37 Petition with the trial court bars him from relying on the *Martinez* exception to excuse his now procedurally defaulted ineffective assistance of trial counsel claims.

## III. Conclusion

Because Travis has procedurally defaulted all of his § 2254 habeas claims, this action should be dismissed, with prejudice.

IT IS THEREFORE RECOMMENDED THAT the Petition for a Writ of Habeas Corpus be DENIED and this habeas case be DISMISSED, WITH PREJUDICE. IT IS FURTHER RECOMMENDED THAT a Certificate of

---

[16]  *See* also *Trust v. Larkin*, No. 4:09-CV-1101, 2012 WL 4479088, at *8 (E.D. Mo. July 20, 2012), report and recommendation adopted by, 2012 WL 4480719 (E.D. Mo. Sept. 28, 2012); *Anderson v. Koster*, No. 11-1227-CV-W-GAF-P, 2012 WL 1898781, at *9 (W.D. Mo. May 23, 2012) ("*Martinez* is inapposite because, here, petitioner himself is at fault for not filing a pro se [post-conviction] motion in the first place"); *Bland v. Hobbs*, No. 5:11-CV-286, 2012 WL 2389904, at *3 n. 5 (E.D. Ark. June 12, 2012) (failure to file a state post-conviction petition prevents application of the *Martinez* exception), report and recommendation adopted by, 2012 WL 2874118 (E.D. Ark. July 13, 2012); *Castillo v. Ryan*, 2013 WL 3282547, at *5 (D. Ariz. June 28, 2013) (having never filed an "of right" post-conviction proceeding, petitioner never had an "of right" post-conviction attorney, and "now there is no one to shoulder the blame for his default"); *Cook v. Smith*, No. 1:12-CV-00281-BLW, 2013 WL 2458531, at *6-7 (D. Idaho June 6, 2013) (choosing to forego filing a post-conviction relief petition does not fall within the narrow exception established in *Martinez*); *Lutz v. Valeska*, No. 1:10CV950-TMH, 2014 WL 868870, at *5 (M.D. Ala. March 5, 2014) (petitioner's case "is not controlled by *Martinez* and *Trevino* because [he] never filed or sought to file a postconviction action in state court") (emphasis in original); and, *Jones v. Penn. Bd. of Probation and Parole*, 492 Fed. Appx. 242, 246 (3rd Cir. 2012) (unpublished), *cert. denied*, 133 S.Ct. 1316 (Feb. 19, 2013) (procedural default cannot be excused where petitioner failed to initiate any state collateral proceeding at all).

Appealability be DENIED pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases.

Dated this 5th day of September, 2017.

_____
UNITED STATES MAGISTRATE JUDGE